**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____

**ANTHONY LOBBAN,**

                    **Plaintiff,**


          **v.**                              **Case No.: 18-CV-00247 (CS)(PED)**


**CROMWELL TOWERS APARTMENTS, LIMITED**
**PARTNERSHIP, METROPOLITAN REALTY**
**GROUP, LLC, GPJ CROMWELL LLC, and**
**JOHN CARROLLO, individually,**
                    **Defendants.**
_____

_____

### DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS AND/OR COMPEL ARBITRATION
_____


**Goldberg and Weinberger LLP**
**Stuart A. Weinberger, Esq.**
**630 Third Avenue, 18th Floor**
**New York, New York 10017**
**(212) 867-9595 x313**


Dated: New York, New York
          June 18, 2017

## TABLE OF CONTENTS

**Page(s)**

**Table of Contents**                                                              i

**Table of Authorities**                                                           ii

**Preliminary Statement**                                                          1

**Statement of Facts**                                                             2

      A.  Background                                  2

      B.  Arbitration                                 4

**Argument**                                                                       8

**Point I**
**All Of Plaintiff's Claims Must Be Dismisssed Because They Are All Subject
To Arbitration**                                                                   9

**Point II**
**All of Plaintiff's Claims Must Be Dismissed Because They Are Barred By
Collateral Estoppel and Res Judicata**
      13

    A.  Plaintiff's Title VII, NYSHRL, and NYCHRL Retaliation Claims Must Be
       Dismissed Because They Were Already Litigated and Decided By
      the Arbitrator                                                      13

    B.  Plaintiff's FLSA and NYLL Retaliation Claims Must Be Dismissed.       14

      i) Plaintiff's FLSA and NYLL Retaliation Claims are Barred by
       Res Judicata                                                       14

      ii) Plaintiff Has Failed to Establish Claims for Relief under the
       the FLSA or NYLL                                                   16

    C.  Plaintiff's Discrimination Claims Must Be Dismissed                   19

**Point III**
**Plaintiff's New York City Human Rights Law Claims Must Be Dismissed**            21

**Conclusion**                                                                     23

## **TABLE OF AUTHORITIES**

**Cases**                                                                              **Page(s)**

*14 Penn Plaza v. Pyett*, 556 *U.S.* 247, 129 *S.Ct.* 1456 (2009).                      1, 10, 12

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009).                                               8

 *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).                                8

*Bengonio v. Vornado Trust Realty, et.al.*, 159 F.Supp.3d 402 (S.D.N.Y. 2016).          12

*Bouras v. Good Hope Mgmt. Corp.*, 11 Civ. 8708 (WHP), 2012 WL 30558644
(S.D.N.Y. July 24, 2012).                                                               12

*Burkybile v. Bd. of Educ. of Hastings-on-Hudson Union Free Sch. Dist.,*
411 F.3d 306 (2d Cir. 2005).                                                            15

*Cox v. Perfect Building Maintenance Corp.,* 16-CV-7474 (VEC),
2017 WL 3049547 (S.D.N.Y. July 18, 2017).                                               9, 15

*Curto v. Med. World Commc'ns, Inc.*, 388 F.Supp.2d 101 (E.D.N.Y. 2005).                22

*DeJesus v.HF Management Services, LLC*, 736 F.3d 85 (2d 2013).                          18

*Dundon v. Komansky,* Fed.Appx. 27 (2d Cir. 2001).                                      13

*Dunn v. Sedearikis,* 143 F.Supp.3d 102 (S.D.N.Y. 2015).                                17

*Feldheim v. Financial Recovery Services, Inc.*, 257 F.Supp. 361 (S.D.N.Y. 2017).       8

*Fried v. LVI Servs., Inc*., No. 10-CV-9308, 2011 WL 4633985
(S.D.N.Y Oct 4, 2011).                                                                  22

*Garcia v. Golden Abacus Inc.,* 16-CV-6562 (LTS), 2017 WL 2560007,
(S.D.N.Y. June 13, 2017).                                                               11

 *Germosen v. ABM Industries Corp*., No. 13–cv–1978 (ER), 2014 WL 4211347
(S.D.N.Y. August 26, 2014).                                                             12, 21

 *Granados v. Harvard Maint., Inc.*, No. 05-CV5489 (NRB), 2006 WL 435731,
 (S.D.N.Y. Feb. 22, 2006).                                                              9

*Greathouse v. JHS Security, Inc.,* 784 F.3d 105 (2d Cir. 2015).                        16

| **Cases** | **Page(s)** |
|---|---|
| *Hoffman v. Parade Publications* 15 N.Y.3d 285, 907 N.Y.S.2d 145, 933 N.E.2d 744, 746-47 (2010). | 22 |
| *Kasten v. Saint Gobain Performance Plastics Corp.,* 563 U.S. 1 (2011). | 16 |
| *Lawrence v. Sol G. Atlas Realty Co.,* 841 F.3d 81 (2d Cir. 2016). | 10, 11 |
| *Leon v. Rockland Psychiatric Center*, 232 F.Supp.3d 420 (S.D.N.Y 2017). | 22 |
| *Matusick v. Erie County Water Authority,* 757 F.3d 31 (2d Cir. 2014). | 15 |
| *McNamara v. Associated Press,* 40 F.Supp.3d 345 (S.D.N.Y. 2014). | 17 |
| *Mullins v. City of New York*, 626 F.3d 47 (2d Cir. 2010). | 16 |
| *Pike v. Freeman*, 266 F.3d 78 (2d Cir. 2001). | 13 |
| *Pointier v. U.H.O Mgt Corp.*, 10 Civ. 8828 (RMB), 2011 WL 1346801 (S.D.N.Y. April 1, 2011). | 12 |
| *Restea v. Brown Harris Stevens LLC*, 17-Civ-4801 (VEC)(GWG), 2018 WL 1449183 (S.D.N.Y. March 23, 2018). | 10, 12, 20, 21 |
| *Robinson v. Purcell Const. Corp.*, 647 Fed.Appx. 29 (2d Cir. 2016). | 14 |
| *Robledo v. No. 9 Parfume Leasehold,* 12-CV-3579 (ALC) (DF), 2013 WL 1718917, (S.D.N.Y. April 9, 2013). | 17 |
| *Robles v. Cox and Co., Inc.,* 841 F.Supp.2d 615 (E.D.N.Y. 2012). | 22 |
| *Ross v. Am. Express Co.,* 547 F.3d 137, 142 (2d Cir. 2008). | 10 |
| *Starr v. Sony BMG Music Entertainment,* 592 F.3d 314, 321 (2d Cir. 2010). | 8 |
| *Sum v. Tishman Speyer Properties, Inc.* 37 A.D.3d 284 (1st Dept. 2007). | 10 |
| *Sydney v. Time Warner Entertainment-Advance/Newhouse Partnership,* WL 1167284, (N.D.N.Y. March 28, 2017). | 18 |
| *United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564 (1960). | 10 |
| *Vangas v. Montefiore Medical*, 823 F.3d 174, 182-183 (2d. Cir. 2016). | 22 |

*Watkins v. First Student, Inc.,* 17-CV-1519 (CS), 2018 WL 1135480
(S.D.N.Y. Feb. 28, 2018).                                    16, 18

### Statutes and Rules

|                                                              | Page(s)              |
| ------------------------------------------------------------ | -------------------- |
| 42 U.S.C.§ 1981                                              | 4, 6, 9, 11, 19      |
| Fair Labor Standards Act, 29 U.S.C. § 215                    | 7, 16                |
| Federal Arbitration Act                                      | 10                   |
| FRCP Rule 12(b)(1)                                           | 8, 12                |
| FRCP Rule 12(b)(6)                                           | 1, 9, 12             |
| Federal Rules of Evidence 201                                | 9                    |
| Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e | 4, 6, 9, 11, 13, 14, 19 |
| New York City Administrative Code § 8-107(1)(a)              | 6                    |
| New York City Administrative Code § 8-107(6)                 | 7                    |
| New York City Administrative Code § 8-107(7)                 | 6                    |
| New York Labor Law § 215                                     | 7, 16                |
| New York State Executive Law § 296                           | 6, 9, 13, 19         |

## PRELIMINARY STATEMENT

Plaintiff Anthony Lobban ("Plaintiff" or "Lobban") instituted this action, claiming that he was discriminated against at his job because of his race by Defendants Cromwell Towers Apartment Limited Partnership ("Cromwell Towers"), Metropolitan Realty Group, LLC ("Metropolitan"), GPJ Cromwell, LLC ("GPJ"), and John Carrollo. Plaintiff further alleges that he was discharged because of his race and because he filed a charge at the Equal Employment Opportunity Commission ("EEOC"). Lobban also claims that he was fired for raising certain questions regarding monies that he claims he was owed under the collective bargaining agreement ("CBA").

Defendants assert that the exclusive remedy for these claims is arbitration under the CBA. *14 Penn Plaza v. Pyett*, 556 *U.S.* 247, 129 *S.Ct.* 1456 (2009). Moreover, several of these claims, including his claim that he was fired in retaliation for filing a charge at the EEOC, and the reason for his discharge, were already arbitrated before an arbitrator in accordance with the CBA. Lobban raised these claims at arbitration and lost. The arbitrator found that he was fired for just cause and not in retaliation for filing a charge at the EEOC. The arbitrator also found that his allegations of discrimination were "unsupported."

As set forth below, since many of the claims asserted by Plaintiff in this case were already litigated and decided by the arbitrator, he is now barred from bringing these claims in court. In addition, because several of the claims Plaintiff is now asserting could have been brought before the arbitrator and were not, they are now barred by the doctrine of res judicata and should be dismissed pursuant to Rule 12(b)(6).

1

Finally, to the extent Lobban is not barred by collateral estoppel or res judicata from litigating certain claims, the Court should nevertheless dismiss the claims because the CBA mandates that the exclusive forum to litigate these claims is before the arbitrator, not the courts.

## STATEMENT OF FACTS

**A.   Background**

Plaintiff Anthony Lobban was employed as a porter at an apartment building located at 77 Locust Hill Avenue, Yonkers, New York. (Ex. A at ¶¶ 13, 25; Ex. B at p. 1.) [1] [2] Plaintiff began his employment at that location beginning around July 3, 2009. (Ex. A at ¶ 25.) Defendants Cromwell Towers Apartment Limited Partnership, Metropolitan Realty Group, LLC, and GPJ Cromwell, LLC operated and maintained the apartment building at 77 Locust Hill Avenue. (Ex. A at ¶ 13.) These defendants were joint employers of Lobban. (Ex. A at ¶ 13.). Defendant John Carrollo was the manager for the defendants. (Ex. A at ¶ 20.). Carrollo was Lobban's supervisor. (Ex. A at ¶ 21.)

Lobban was represented by a union, Service Employees International Union, Local 32BJ ("the Union"). (Ex. A at ¶¶ 32, 37-38.) Plaintiff's employment was governed by the CBA. (Ex. A at ¶ 46; Ex. B at p. 1; Ex. C, generally.)

In his Complaint, Plaintiff alleges that defendants engaged in discrimination against him based on his race. In particular, Lobban alleged that Carrollo harassed him, engaged in threatening conduct, and made several discriminatory comments. (Ex. A at ¶¶ 33-35, 39, 47, 51-54, 56.) In addition, Plaintiff alleges that on several occasions in August and September 2015, he allegedly

---

[1] For purposes of this motion only, the facts alleged in the Complaint will be assumed to be correct.

[2] All citations to the exhibits annexed to the Declaration of Stuart Weinberger, dated June 18, 2018, are referenced herein as "Ex. __."

complained to Carrollo and Scott Jaffee, an owner of the corporate defendants, about being short-changed pay under the CBA, and deducting "for a uniform maintenance, which was against Plaintiff's union contract." (Ex. A at ¶¶ 41-46.) According to the Complaint, Carrollo told Lobban that Jaffee had said that Lobban had to "go through the union next time." (Ex. A at ¶¶ 48.) In April 2016, Lobban again allegedly complained about not being paid properly under the CBA to some unspecified person. After he complained, Mr. Phil Gambino, the Defendants' owner, partner and chief financial officer, responded to this complaint about being owed two vacation days and threatened war with the Union. (Ex. A at ¶ 49.) Plaintiff's pay was thereafter corrected. (Ex. A at ¶ 49.) Lobban alleges that "soon thereafter, Plaintiff's wage statements became irregular again, and he was not properly paid for overtime and other side jobs for Defendants." (Ex. A at ¶ 50.)

In July 2016, Plaintiff alleges that he was suspended after he "protested working overtime, when he was not being paid for it." (Ex. A at ¶ 57.)  Plaintiff alleges that the suspension was issued approximately one week after "Plaintiff complained about being verbally discriminated against by Defendant Corrollo, in front of other co-workers." (Ex. A at ¶ 57.) Following his suspension, a meeting was held between Lobban, his union representatives, and representatives of the Defendants. The issue discussed at the meeting was Lobban's failure to maintain the dumpster area. (Ex. B at pp. 8, 14.) Plaintiff did not raise any claims of discrimination at this meeting. Lobban accepted the suspension. (Ex. B at p. 8.)

After the meeting with the Union, Plaintiff filed a charge of discrimination with the EEOC. (Ex. A at ¶ 59.) The charge, which was filed on August 17, 2016, alleged that he was subject to discrimination and retaliation. (Ex. A at ¶ 59.)

On September 24, 2016, Lobban was terminated from employment for failure to perform his job duties. (Ex. A at ¶ 64.) On November 3, 2016, Plaintiff filed another charge with the EEOC,

alleging that he was terminated in retaliation for filing the initial August 17, 2016 charge. (Ex. A at ¶ 65.) The EEOC issued right to sue notices on November 3, 2017. (Ex. A at ¶ 7.)

**B.     Arbitration**

Following Plaintiff's termination, the Union filed a grievance. The Union ultimately filed for arbitration relating to Lobban's discharge. (Ex. B, generally.) Article Six of the CBA between the Union and Cromwell Towers, LP states as follows:

> 1. Any dispute, controversy or grievance arising under the Agreement between the parties or between any Employer and the Union or any of its members shall first be submitted in writing by the party claiming to be aggrieved to the other within 30 days for discharges or suspensions and 120 days for other grievances except for fund delinquencies. Fund delinquencies must be brought within 6 years of their occurrence.
>
> …
>
> 6. There shall be no discrimination against any present or future employee by reason of race, creed, color, age, disability, national origin, sex, sexual orientation, union membership, or any characteristic protected by law, including but not limited to, claims made pursuant to Title VII of the Civil Rights Act, the American with Disabilities Act, the Age Discrimination in Employment Act, 42 U.S.C. Section 1981, Family and Medical Leave Act, the New York State Human Rights Law, the Westchester County Human Rights Law, or any other similar laws, rules arbitration procedure as the sole and esclusive remedy for violations. Arbitrators shall apply appropriate law in rendering decisions based upon claims of discrimination. The parties furth adopt the Protocal in the collective bargaining agreement between the Realty Advisory Board on Labor Relations ("RAB") and the Union in the residential agreement with the exception that the Employer shall be substituted for the RAB in the protocals.

(Ex. C at pp. 8-9.)

The RAB collective bargaining agreement provides a protocal for the resolution of disputes involving discrimination. (Ex. D at  107-115.) The protocal allows employees to bring a grievance and proceed to arbitration even if the Union does not arbitrate the grievance on behalf of the employee. (Ex. D at   107-105.)

4

Plaintiff's arbitration was held over the course of two days.Several witnesses testified. (Ex. B at p. 1.) At the arbitration, the Union alleged, on behalf of Plaintiff, that there was no just cause to discharge Lobban and that Lobban was discharged in retaliation for filing the August 16, 2017 EEOC charge. (Ex. B at pp. 13-14.) The Union did not specifically argue that Lobban was terminated based on racial discrimination. (Weinberger Decl. at ¶ 8.) However, while the claim of racial discrimination was not explicitly asserted by the Union as a matter for the arbitrator to decide, the issues related to his race, including the suspension and the acts related to the suspension, were raised and discussed at length at the hearing. (Weinberger Decl. ¶ 9; Ex. B at p. 14-15.) At the arbitration, the Union and Lobban did not make any allegations that his discharge had anything to do with any purported complaints regarding wages. (Weinberger Decl. ¶ 10.) Likewise, the Union and Lobban never made any allegations that he was discharged because he complained about Defendants' purported failure to pay him in accordance with the CBA. (Weinberger Decl. ¶ 10.)

On January 3, 2018, the arbitrator issued an arbitration award, finding that there was "just cause" to terminate Plaintiff's employment. (Ex. B at pp. 14-15.) The arbitrator stated that Lobban failed to clean the dumpster area, after being warned of the priority of cleaning the dumpster area and having received a prior suspension relating to the area not being cleaned. (Ex. B at pp. 14-15.) The arbitrator also determined that Lobban was not fired in retaliation for filing the August EEOC charge. (Ex. B at p. 14.) In particular, the arbitrator ruled as follows:

> Therefore, the Undersigned further concludes, the Union's and Mr. Lobban's assertion that the Employer terminated him in retaliation for his filing an EEOC charge in August is unsupported. In that regard, the Undersigned finds that the record evidence is that the Employer took the charge seriously, and was in process of continuing its investigation of it when it discovered Mr. Lobban's offense on September 24. The record evidence also establishes that, as Mr. Lobban agrees, the Employer had demonstrated its regard for proper EEOC compliance… The record also shows that Mr. Lobban has been

indiscriminate in making unsupported allegations of not only fires and turned off sprinklers at the Premises, but also of racial discrimination that he did not support in his own testimony at the hearing herein. In that regard, the Undersigned notes that Mr. Lobban's testimony that he accepted his suspension at the meeting at which the Union, the Employer and he were present and discussed the merits of such- at which meeting, Mr Lobban also testified, he did not raise any claims of racial basis for the suspension and further testified that he did not feel his dispute with the Employer over the suspension or that it was based upon racial considerations by the Employer, but was based upon another consideration, i.e., Mr. Lobban's concern about Mr. Carollo's abusive behavior.The undersigned further notes that, notwithstanding Mr. Lobban's testimony, he reported on the face of his EEOC charge that the suspension was in retaliation for his January challenge of Mr. Carollo's racially tinged remarks in January.

… Under all of these circumstances, the Undersigned finds that the Employer's just cause for terminating Mr. Lobban makes clear that such was the basis for his termination, and that the retaliation for filing the EEOC charge should not be found to be the basis.

(Ex. B at pp. 14-15.)

On January 11, 2018, Lobban commenced this action via the filing of a summons and complaint. (Ex. A.) The following causes of action were alleged in the Complaint:

First Cause of Action: Racial discrimination under 42 U.S.C.§ 1981 against all Defendants;

Second Cause of Action: Racial discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et.seq. ("Title VII") against Defendants except for Carrollo;

Third Cause of Action: Retaliation under Title VII against Defendants except for Carrollo;

Fourth Cause of Action: Racial discrimination under the New York State Executive Law § 296 against all Defendants;

Fifth Cause of Action: Retaliation under the New York State Executive Law § 296 against all Defendants;

Sixth Cause of Action: Racial discrimination under the New York City Administrative Code § 8-107(1)(a) against all Defendants;

Seventh Cause of Action: Retaliation under the New York City Administrative Code § 8-107(7) against all Defendants;

6

Eighth Cause of Action: Racial discrimination and and retalitaion against Corrollo individually under the New York City Administrative Code § 8-107(6) for aiding, abetting, inciting, compelling and coercing discriminatory and retaliatory conduct;

Ninth Cause of Action: Retaliation under the Fair Labor Standards Act, 29 U.S.C. § 215 ("FLSA"), against all Defendants;

Tenth Cause of Action: Retaliation under New York Labor Law § 215 ("NYLL") against all Defendants.

Defendants assert these claims must be dismissed because arbitration was the forum required to arbitrate the claims alleged in this case. Specifically, the third, fifth and seventh causes involving retaliation must be dismissed because they have already been adjudicated by the arbitrator and must be dismissed on the grounds of res judicata and collateral estoppel.

The ninth and tenth causes of action must be dismissed because they are barred by res judicata because they should have been raised at the arbitration. If they are not dismissed, the claims must be arbitrated because the arbitrator has exclusive jurisdiction to determine the claims.

The claims of discrimination in the first, second, and fourth causes of action must be dismissed on grounds of res judicata and collateral estoppel because the arbitrator determined that there was no discrimination. If these claims are not dismissed, they must be arbitrated.

The sixth and seventh causes of action under the New York City Administrative Code also must be dismissed because the New York City Administrative Code does not apply to Lobban. The eighth cause of action (claim against Corrollo) under the New York City Administrative Code was withdrawn.

In sum, the claims involving the New York City Administrative Code must be dismissed because the New York City Adminstrative Code does not apply to Lobban. All the other causes of action (including those covered by the New York City Administrative Code if they are not dismissed because it does not apply to Lobban) must be dismissed as barred by the arbitration

award. To the extent they are not barred by the prior award, those causes action must be dismissed and Lobban should be compelled to arbitrate these claims under the CBA.

## **ARGUMENT**

It is well settled that "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court need not accept as true legal conclusions. *Id.* at 678. "Threadbare recitals of elements of a cause of action" fail to state a plausible claim. *Id.* The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). Rather, the complaint must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A complaint that contains only "labels and conclusions" or "a formulaic recitation" of the required pleading elements will not be sufficient to state a cause of action. *Id.* at 570. Significantly, if the allegations in the complaint do not allow a reasonable inference stronger than the "mere possibility of misconduct," the complaint must be dismissed. *Starr v. Sony BMG Music Entertainment,* 592 F.3d 314, 321 (2d Cir. 2010).

In the case at bar, the Defendants have moved to dismiss under Rule 12(b)(1), lack of subject matter jurisdiction, and Rule 12(b)(6), for failure to state a claim. The standards of determining a motion to dismiss under Rule 12(b)(1) and (6) are "substantively identical." *Feldheim v. Financial Recovery Services, Inc.*, 257 F.Supp. 361, 365 (S.D.N.Y. 2017) (internal citations omitted). However, in deciding whether the court has subject matter jurisdiction, the party

asserting that the court has jurisdiction has the burden of proof to show that the court has jurisdiction. *Id.* Where the court's jurisdiction is in dispute, the court can use evidence that is not referred to in the pleadings, including affidavits. *Id.*

In contrast, in deciding a 12(b)(6) motion, the party moving to dismiss bears the burden of proof to show that the claim should be dismissed. *Id.* at 665-666 Under Rule 12(b)(6), the Court generally "confines it analysis the facts alleged in plaintiff's complaint." *Cox v. Perfect Building Maintenance Corp.,* 16-CV-7474 (VEC), 2017 WL 3049547, at *3 (S.D.N.Y. July 18, 2017). However, courts take judicial notice of facts outside of the pleading if the facts "can be accurately and readily determined from sources whose accuracy cannot be questioned." Fed. R. Evid. 201(b). Courts regularly take judicial notice of collective bargaining agreements when determining motions to dismiss under Rule 12(b)(6). *Cox* 2017 WL 3049547, at *3; *Granados v. Harvard Maint., Inc.*, No. 05-CV5489 (NRB), 2006 WL 435731, at *3 n.3 (S.D.N.Y. Feb. 22, 2006). Courts also take judicial notice of arbitration awards issued pursuant to a collective bargaining agreement. *Cox* 2017 WL 3049547, at *3.


## POINT I

## ALL OF PLAINTIFF'S CLAIMS MUST BE DISMISSSED BECAUSE THEY ARE ALL SUBJECT TO ARBITRATION

The arbitration clause contained in the CBA has a broad provision requiring arbitration of any dispute arising under the CBA. (Ex. C A at pp. 8-9.) The CBA also contains an anti-discrimination provision which specifically prohibits discrimination of any kind. The provision further provides any claims of discrimination, including claims based on Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 1981, the New York State Human Rights Law ("NYSHRL"), and all other similar laws, rules and regulations shall ***"shall be subject to the grievance and***

*arbitration procedure as the sole and exclusive remedy for violations."* (Ex. C A at p. 9.) (emphasis added).

In *14 Penn Plaza v. Pyett*, 556 *U.S.* 247, 129 S.Ct. 1456 (2009), the collective bargaining agreement, like in the case at bar, provided that arbitration was "the sole and exclusive remedy for violations" and that the arbitrator "shall apply appropriate law in rendering decisions based upon claims of discrimination. *Id.* In *14 Penn Plaza v. Pyett*, the Supreme Court held that the Union "enjoys broad authority… in the negotiation and administration of [the] collective bargaining agreement [citation omitted]." *Id. at* 556 *U.S.* at 255-256. "The [National Labor Relations Act] provided the Union and [the Employer] with statutory authority to collectively bargain for arbitration of discrimination claims." *Id. at* 556 *U.S.* at 260. The Court held that the union, as the collective bargaining representative, could agree in a collective bargaining agreement that employees could be compelled to arbitrate their age discrimination claims as the exclusive remedy, precluding a lawsuit in court on the same claims. *Id. at* 556 *U.S.* at 274. The Court further found that the collective bargaining agreement gave the arbitrator authority to resolve discrimination claims and that the "collective bargaining provisions expressly covers both statutory and contractual discrimination claims [footnote omitted]." *Id. at* 556 *U.S.* at 264.

There also is a strong federal policy favoring arbitration of a dispute under a collective bargaining agreement. *United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564 (1960). Indeed, "[t]he Federal Arbitration Act ("FAA") reflects a strong federal policy favoring arbitration as a means of dispute resolution." *Ross v. Am. Express Co.,* 547 F.3d 137, 142 (2d Cir. 2008). Section 2 of the FAA provides that:

> A written provision in any … contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, … shall be valid, irrevocable, and enforceable, save

upon such grounds as exist at law or in equity for the revocation of any contract.

Thus, courts have repeatedly found that disputes must be arbitrated under a collective bargaining agreement if the collective bargaining agreement expressly provides for arbitration of those disputes as the exclusive remedy. *Lawrence v. Sol G. Atlas Realty Co.,* 841 F.3d 81, 83 (2d Cir. 2016) ("claims under Section 1981, Title VII, the NYSHRL, the FLSA, and NYLL may be subject to arbitration."); *Restea v. Brown Harris Stevens LLC*, 17-Civ-4801 (VEC)(GWG), 2018 WL 1449183 (S.D.N.Y. March 23, 2018) (Magistrate Judge issuing a Report and Recommendation dismissing case, and compelling employee various employment discrimination claims under Federal, State and Local Laws under a contract with the identical RAB protocol as here, and dismissing employee's court action.). *Sum v. Tishman Speyer Properties, Inc.* 37 A.D.3d 284 (1st Dept. 2007) (requiring arbitration of claims under the New York City Administrative Code through arbitration under a collective bargaining agreement).

When considering whether to compel arbitration, "courts must determine: (1) whether the parties entered into an agreement to arbitrate; (2) if so, the scope of that agreement; (3) if federal statutory claims are asserted, whether Congress intended those claims be non-arbitrable; and (4) if some, but not all, claims are subject to arbitration, whether to stay the balance of the proceedings pending arbitration." *Garcia v. Golden Abacus Inc.,* 16-CV-6562 (LTS), 2017 WL 2560007, at *2 (S.D.N.Y. June 13, 2017) (internal citations omitted). In the case at bar, there can be no doubt that the CBA binds Mr. Lobban to arbitration as the forum to resolve all claims of discrimination. The plain and unambiguous language of the CBA explicitly provides that all causes of action based on discrimination must be arbitrated. Courts have repeatedly held that Congress intended the claims asserted by Plaintiff in this case to be arbitrable. *See Lawrence v. Sol G. Atlas Realty Co.,* 841 F.3d 81, 83 (2d Cir. 2016) ("claims under Section 1981, Title VII, the NYSHRL, the FLSA, and NYLL

11

may be subject to arbitration."). Numerous cases have mandated an employee, under the same or similar protocol, to arbitrate the discrimination claims. *Restea v. Brown Harris Stevens,* LLC, 2018 WL 1449183 at *3-5; *Germosen v. ABM Industries Corp*., No. 13–cv–1978 (ER), 2014 WL 4211347 at *4 (S.D.N.Y. August 26, 2014); *Bouras v. Good Hope Mgmt. Corp.*, 11 Civ. 8708 (WHP), 2012 WL 3055864 at * 4 (S.D.N.Y. July 24, 2012); *Pointier v. U.H.O Mgt Corp.*, 10 Civ. 8828 (RMB), 2011 WL 1346801 at *3 (S.D.N.Y. April 1, 2011).

As set forth in Point II and Point III, *infra,* all of Plaintiff's retaliation and discrimination claims are barred by collateral estoppel and res judicata under Rule 12(b)(6). However, to the extent that they are not barred, they must nevertheless be dismissed by the court under Rule 12(b)(1) and Rule 12(b)(6) because the exclusive remedy for these claims is arbitration under the CBA.

The dismissal of these claims should pertain to all Defendants named in this case. Lobban cannot avoid arbitration by simply naming parties that he claims are joint employers and a supervisor. *Bengonio v. Vornado Trust Realty, et.al.*, 159 F.Supp.3d 402, 415 fn.4 (S.D.N.Y. 2016) (dismissing claim against supervisor where the protocol with same union provided for arbitration of disputes). While the CBA was between Cromwell Towers and the Union, the arbitration award bars claims against the entities Plaintiff alleges are "joint employers," Metropolitan and GPJ, because they are clearly in privity with Cromwell Towers. (Ex. A at ¶ 13.)

Similarly, the claims against John Carrollo also must be dismissed. Carrollo is also in privity with the other Defendants. In effect, if Carrollo, Plaintiff's supervisor, was liable for the retaliation or discrimination alleged, Cromwell Towers would have been liable for Carrollo's acts. Allowing individual claims to be asserted against individual supervisors who works for one of the parties to a CBA would defeat and nullify the mandate of the court in *14 Penn Plaza v. Pyett*, and

contradict federal law that a union, as the collective bargaining representative, could negotiate to make arbitration the exclusive forum to determine and remedy claims. Plaintiff's claims must, therefore, be dismissed against all Defendants.

## POINT II

**ALL OF PLAINTIFF'S CLAIMS MUST BE DISMISSED BECAUSE THEY ARE BARRED BY COLLATERAL ESTOPPEL AND RES JUDICATA**

**A.    Plaintiff's Title VII, NYSHRL, and NYCHRL Retaliation Claims Must Be Dismissed Because They Were Already Litigated and Decided by the Arbitrator**

In his Complaint, Plaintiff asserts that Defendants terminated him from employment in retaliation for his prior complaints of discrimination, including the EEOC charge he filed in August 2016. It is well settled that collateral estoppel bars re-litigation of an issue if: (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits. *Dundon v. Komansky,* Fed.Appx. 27, 29 (2d Cir. 2001). The Second Circuit has made clear that the doctrines of res judicata and collateral estoppel can be based on arbitration proceedings. *Pike v. Freeman*, 266 F.3d 78, 90-91 (2d Cir. 2001).

At his arbitration, Mr. Lobban specifically argued that his termination was in retaliation for his filing an EEOC charge. Indeed, the Title VII, NYSHRL, and NYCHRL retaliation claims asserted in the Complaint are premised on the exact same allegations – that Plaintiff was terminated in retaliation for filing an EEOC charge in August 2016. The arbitrator carefully considered Lobban's claim of retaliation at the hearing. The arbitrator received evidence, including documents

13

and testimony, relating to the argument of retaliation. The arbitrator rejected Lobban's retaliation

argument, ruling, in relevant part:

> The Employer was warranted in its conclusion that Mr. Lobban's actions on
> September 24 [failure to clean the dumpster area despite being warned and
> suspended] indicated he was incorrigible and his termination was justified," thereby
> ruling that Plaintiff was terminated for "just cause."
> …
> In sum, Mr. Lobban's versions of events and assertions do not withstand scrutiny
> and have led the Undersigned to conclude that Mr. Lobban himself was responsible
> for both his suspension and termination. Under all of these circumstances, the
> Undersigned finds that the Employer's just cause for terminating Mr. Lobban
> makes clear that such was the basis for his termination, and that the retaliation for
> filing the EEOC charge should not be found to be the basis.

(Ex. B at p. 14-15.) Clearly, the arbitrator rejected Plaintiff's retaliation claims based on purported

violations of Title VII, NYSHRL, and NYCHRL. Lobban's discrimination claims were already

litigated and already decided against him in the forum that had exclusive jurisdiction to determine

the claim. As a result, because Lobban is barred from re-litigating the same claims that have

already been decided by the arbitrator, Plaintiff's Title VII, NYSHRL, and NYCHRL in the third,

fifth, and seventh causes of action of the Complaint, must be dismissed.

**B.     Plaintiff's FLSA and NYLL Retaliation Claims Must Be Dismissed.**

In his Complaint, Plaintiff alleges that he was also retaliated against in violation of the

FLSA and NYLL in the ninth and tenth causes of action. These claims must be dismissed.

*i)     Plaintiff's FLSA and NYLL Retaliation Claims are barred by Res Judicata*

As an initial matter, Plaintiff's FLSA and NYLL retaliation claims are barred by the

doctrine of res judicata. "A claim may be barred by res judicata if: (1) the prior action involves a

judgment on the merits; (2) the prior action involves the same parties or those in privity; and (3)

the claims asserted in the action were, or could have been asserted in the prior action." *Robinson*

*v. Purcell Const. Corp.,* 647 Fed.Appx. 29, 30 (2d Cir. 2016). "In considering whether a claim

was, or could have been raised in the prior proceeding, the court considers whether the claims arise from the same nucleus of operative fact." *Cox v. Perfect Building Maintenance Corp.,* 16-CV-7474 (VEC), 2017 WL 3049547, at *5 (S.D.N.Y. July 18, 2017). There is no doubt that a claim of retaliatory termination arises from the same set of underlying facts adjudicated at Mr. Lobban's arbitration. At his hearing, Mr. Lobban had every opportunity to assert that his termination was retaliation for allegedly complaining about wages and benefits he believed were owed to him under the union contract. Neither Lobban, nor the Union, ever raised such an argument. (Weinberger Decl. at ¶ 10.) The failure to raise the argument at the arbitration, therefore, bars the FLSA and NYLL claims under the doctrine of res judicata. *See Cox,* 2017 WL 3049547 at *5 ("because [plaintiff's] claims in this action arise from the same set of circumstances at the arbitration, and she either did or could have arbitrated them, res judicata bars her federal suit.").

In addition, the primary issues underlying these claims – whether or not Defendants terminated Plaintiff for just cause and Defendants retaliated against Lobban– were already decided by the arbitrator. *See Burkybile v. Bd. of Educ. of Hastings-on-Hudson Union Free Sch. Dist.,* 411 F.3d 306, 313 (2d Cir. 2005) ("we do accept, based on the hearing officer's determinations, that [plaintiff] was terminated for just cause."); *Matusick v. Erie County Water Authority,* 757 F.3d 31, 49 (2d Cir. 2014) ("the factual findings supporting the hearing officer's ultimate conclusion – that [plaintiff] had indeed committed the charged conduct … precluded [plaintiff] from arguing otherwise at trial.") As such, in this case, Lobban will be unable to plausibly argue that his termination was based on his alleged complaints regarding paycheck discrepancies and benefits allegedly owed to him under the CBA. Therefore, since he cannot state a plausible claim, Plaintiff's FLSA and NYLL claims must be dismissed.

15

*ii)* *Plaintiff Has Failed to Establish Claims for Relief under the FLSA or NYLL*

Even if Plaintiff's FLSA and NYLL claims were not barred by res judicata and collateral estoppel (which they are), they nevertheless fail because he has not alleged sufficient facts which, even if accepted as true, would constitute a basis for a retaliation claim under the statutes. Under the FLSA, an employer is prohibited from "discharg[ing] or in any other manner discriminat[ing] against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to" to the FLSA. 29 U.S.C. § 215(a)(3). Similarly, under NYLL, it is unlawful for an employer to "discriminate or retaliation against any employee … because such employee has made a complaint to his or her employer … that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates the statute." NYLL § 215(1)(a). Generally, to establish retaliation under the FLSA and the NYLL, a plaintiff must show: (1) participation in protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) causal connection between the protected activity and the adverse employment action. *Mullins v. City of New York,* 626 F.3d 47, 53 (2d Cir. 2010).

An employee may bring a retaliation claim based on internal complaints so long as "the complaint is sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Greathouse v. JHS Security, Inc.,* 784 F.3d 105, 107 (2d Cir. 2015) (quoting *Kasten v. Saint Gobain Performance Plastics Corp.,* 563 U.S. 1, 14 (2011)). Courts interpreting this standard "have held that the protected complaint must allege that the employer is engaged in a violation of the law." *Watkins v. First Student, Inc.,* 17-CV-1519 (CS), 2018 WL 1135480, at *10 (S.D.N.Y. Feb. 28, 2018) (dismissing FLSA and NYLL retaliation claims where plaintiff's letters to employers did not provide employer "with a basis for him to infer that she was claiming an

16

FLSA or NYLL violation."); *Dunn v. Sedearikis,* 143 F.Supp.3d 102, 112 (S.D.N.Y. 2015) (granting motion to dismiss retaliation claim where complaint "does not allege [plaintiff] ever complained, let alone repeatedly, that defendants were engaged in a violation of the law."); *Robledo v. No. 9 Parfume Leasehold,* 12-CV-3579 (ALC) (DF), 2013 WL 1718917, at *9 (S.D.N.Y. April 9, 2013) ("asking how wages are being calculated, or informing management of 'questions and concerns,' is not the same thing as complaining a particular, perceived violation of law.")

In his Complaint, Plaintiff alleges that he: (1) complained to Carrollo in August 2015 regarding his alleged "pattern of short changing Plaintiff as to his pay under the contract"; (2) complained to Scott Jaffe via email in September 2015 regarding "discrepancies in his pay"; (3) spoke to the payroll department at an unspecified date and time "to correct the discrepancies in his pay"; (4) complained to Carrollo in December 2015 "regarding a deduction for uniform maintenance which was against Plaintiff's union contract"; (5) complained to an unspecified person in April 2016 regarding "two vacation days owed." (Ex. A at ¶¶ 41-49.) These complaints, which are all internal, simply do not provide Defendants with any basis to infer that Lobban was, in his complaints, claiming that there was a violation of applicable law. Rather, it is clear that Plaintiff's complaints related to his belief that he was not being paid properly under the CBA. These are contract disputes or grievances. It is well established, however, that such complaints, even if they relate to the payment of wages, do not constitute protected activity under the FLSA or NYLL. *See Dunn,* 143 F.Supp.3d at 110 (dismissing retaliation claim where plaintiff complained about union contract, noting "under settled law, the FLSA neither converts an employer's contract breach into a violation of federal law, nor generally federalizes disputes between employers and employees."); *McNamara v. Associated Press,* 40 F.Supp.3d 345, 354

17

(S.D.N.Y. 2014) (dismissing retaliation claim where "plaintiff complained only that she had not been paid what she had been promised, not that defendant was violating the FLSA."); *Sydney v. Time Warner Entertainment-Advance/Newhouse Partnership,* WL 1167284, at *8 (N.D.N.Y. March 28, 2017) (dismissing retaliation claims, noting "complaints about unpaid commissions and about Defendant's pay structure do not assert a colorable violation of the FLSA and are thus not protected activity").

Further, to the extent that Plaintiff is asserting that he was retaliated against following his complaint to Phil Gambino in April 2016, the claim must fail. Even assuming his complaint about his two days of vacation pay, which was responded to by Mr. Gambino, constituted a protected activity (which it does not), Plaintiff has not alleged sufficient facts to establish that he was subjected to an adverse action. Lobban simply alleges that "soon thereafter, Plaintiff's wage statements became irregular again, and he was not properly paid for overtime and other side jobs for Defendants." This allegation cannot form the basis of a retaliation claim. Plaintiff has not provided any details as to what "side jobs" he is referring to in this allegation. Similarly, Plaintiff failed to provide any specificity regarding the overtime allegedly worked and not properly paid. *See DeJesus v. HF Management Services, LLC*, 736 F.3d 85, 88-89 (2d Cir. 2013) (holding that a plaintiff did not plead an FLSA violation where the plaintiff did not allege instances where plaintiff worked overtime.); *Watkins v. First Student, Inc.,* 2018 WL 1135480, at *9 (dismissing FLSA and NYLL overtime claims where plaintiff's claims lacked any specificity). Plaintiff has further failed to allege any facts that would suggest that Defendants failure to furnish regular wage statements was somehow retaliatory. Further, Plaintiff does not even seek relief for allegedly being not paid for side jobs or overtime, and not being furnished wage statements. In short, Plaintiff's Complaint does not contain the requisite minimal facts to sustain a claim of retaliation.

In this case, Lobban has attempted to turn disputes over contractual grievances into FLSA and NYLL claims. Since Plaintiff has not alleged sufficient facts to show that he engaged in activity protected by the FLSA and NYLL or that Defendants subjected him to retaliation, the claims must be dismissed.

Finally, to the extent that such claims are not dismissed by the court for substantive reasons, they should be dismissed because they must be arbitrated in accordance with the CBA. It is clear that, if Plaintiff has alleged a plausible "retaliation" claim, the Plaintiff's claim is predicated on his union membership. This is evidenced by comments allegedly made by Jaffee that Plaintiff "could go f.. himself and go through the union next time," by Carrollo allegedly stating "f.. what the contract says, you pay for it," and Mr. Gambino allegedly "threatening to go to war with the Union over the [vacation day] error." (Ex. A at ¶¶ 46, 48, 49.) The allegations in the Complaint suggest that if there was any retaliation or discrimination, it related to and was because of Plaintiff's union membership. Article Sixth in the CBA clearly states that any such claim must be arbitrated, and that arbitration is the exclusive remedy (Ex. C at pp. 8-9.)

As a result, any claims that are based upon Plaintiff's internal complaints regarding his pay and contract, as alleged in the ninth and tenth causes of action must be dismissed in this forum.

## C.    Plaintiff's Discrimination Claims Must Be Dismissed

In his Complaint, in addition to alleging retaliation, Plaintiff has alleged that Defendants discriminated against him on the basis of his race in violation of Title VII, NYSHRL, NYCHRL, and 42 U.S.C. § 1981. Plaintiff's discrimination claims are barred by res judicata and collateral estoppel. By not raising any claim of discrimination at the arbitration, Lobban has attempted to make an end run around the arbitration process. Even if the Union did not want to pursue a claim of discrimination on his behalf, Lobban clearly had a right to arbitrate his claim of discrimination.

*Restea v. Brown Harris Stevens, LLC*, 17 Civ. 4801(VEC)(GWG), 2018 WL 1449183 (S.D.N.Y. March 23, 2018) (Magistrate Judge finding that the same CBA protocol as in this case allowed the employee to arbitrate his claim if the Union did not arbitrate and finding that arbitration was exclusive remedy for claims of employment discrimination.) Lobban's claims of discrimination arose out of the same operative facts as those already arbitrated, and arbitration was the exclusive forum to remedy those claims. Therefore, Lobban's discrimination claims are barred by res judicata. *See Cox*, 2017 WL 3049547 at *5.

Finally, even if Plaintiff's discrimination claims are not barred by res judicata, the claims are barred by collateral estoppel. While the claim of discrimination was not specifically decided by the arbitration, the issue of discrimination and discriminatory treatment were, in fact, before the arbitrator. As part and parcel of arbitrating the issue of retaliation for allegedly firing him because of his filing the EEOC charge, Lobban testified extensively about what he believed was discrimination. The arbitrator found that "[t]he record also shows that Mr. Lobban has been indiscriminate in making unsupported allegations of not only fires and turned off sprinklers at the Premises, ***but also of racial discrimination that he did not support in his own testimony at the hearing herein***." (Ex. B. at p. 15.) (emphasis added). The arbitrator also noted that, even though he stated on the charge before the EEOC that he was suspended because of discrimination, Lobban admitted at the hearing that he did not believe that his suspension "was based on any racial considerations by the Employer." (Ex. B at p. 15.)

The arbitrator's determination of these facts, and his ultimate determination that the termination was for good cause, must be binding on Plaintiff. Under the CBA, the arbitrator was given the exclusive jurisdiction to determine these issues, not the court. The arbitrator has already determined these issues, finding that there was no racial discrimination.

To the extent that these claims of discrimination are not barred, these claims must be arbitrated. As set forth in Point I, *supra,* the CBA makes clear that any disputes regarding alleged discrimination must be arbitrated since the grievance and arbitration procedure is "the sole and exclusive remedy for violations." (Ex. C. at p. 9.) This provision in the CBA specifically covers claims of discrimination "under Title VII of the Civil Rights Act, 42 U.S.C. Section 1981, …[and] the New York State Human Rights Law" as well as under similar laws and statutes.

Courts have required an employee to arbitrate these types of claims under the Federal Arbitration Act, if the employee wishes to pursue the claim, where the same or similar protocol required them to arbitrate the claims. *Restea v. Brown Harris Stevens,* LLC, 2018 WL 1449183 at *3-5 (recommending that employee be compelled to arbitrate claim under the same protocol); *Germosen v. ABM Industries Corp.*, No. 13–cv–1978 (ER), 2014 WL 4211347 at *4 (S.D.N.Y. August 26, 2014) (holding employee is compelled to arbitrate under the Federal Arbitration Act). Courts also have dismissed the claims by employees where the remedy is to pursue arbitration under the collective bargaining agreement. *Restea v. Brown Harris Stevens,* LLC, 2018 WL 1449183 at *3-5 (recommending that the action be dismissed); *Germosen v. ABM Industries Corp.*, No. 13–cv–1978 (ER), 2014 WL 4211347 at *4 (S.D.N.Y. August 26, 2014) (dismissing the action).

In sum, the discrimination claims in the first, second, fourth and sixth causes of action must be dismissed. If the claims are not dismissed, the claims must be arbitrated.

## POINT III
## PLAINTIFF'S NEW YORK CITY HUMAN RIGHTS LAW CLAIMS MUST BE DISMISSED

It is beyond peradventure that Lobban was employed at an apartment building located in

21

Yonkers, New York. Despite being employed in Yonkers, Lobban has alleged three causes of action under the New York City Administrative Code ("NYCHLR"): the sixth cause of action for race discrimination, the seventh cause of action for retaliation because of his opposition to discrimination, and the eighth cause of action against Carrollo for aiding, abetting, inciting, compelling and coercing discriminatory conduct and retaliatory conduct. The eighth cause of action was withdrawn at the conference on May 10, 2018. The sixth and seventh cause of action must also be dismissed.

To state a claim under the NYCHLR, the employee must allege that the discrimination occurred within the City of New York. *Leon v. Rockland Psychiatric Center*, 232 F.Supp.3d 420, 437 (S.D.N.Y 2017) (dismissing NYCHLR claim because facility was located in Rockland County); *Robles v. Cox and Co., Inc.,* 841 F.Supp.2d 615, 624 (E.D.N.Y. 2012) (dismissing NYCHLR claim where employee worked in Plainview, New York); *Fried v. LVI Servs., Inc*., No. 10-CV-9308, 2011 WL 4633985, at *12 (S.D.N.Y Oct 4, 2011)("The NYCHRL expressly limits the applicability of its protections to acts that occur within the boundaries of New York City."), *aff'd* 500 Fed.Appx. 39 (2d Cir. 2012). "[T]o determine the location of the discrimination under the NYCHRL, courts look to the location of the impact of the offensive conduct." *Curto v. Med. World Commc'ns, Inc.*, 388 F.Supp.2d 101, 109 (E.D.N.Y. 2005). Even if the decision to terminate the employee is made in New York City, the location of the impact is where the employee worked. *Hoffman v. Parade Publications* 15 N.Y.3d 285, 290-291, 907 N.Y.S.2d 145, 147-148, 933 N.E.2d 744, 746-47 (2010); *Vangas v. Montefiore Medical*, 823 F.3d 174, 182-183 (2d. Cir. 2016) (dismissing NYCHRL claim where employee worked in Yonkers).

In the case at bar, Lobban worked in Yonkers. There is not even an allegation of anything related to New York City other than one of the defendants, Cromwell Towers LP, has a place of

business in New York City. (Ex. A at ¶ 10.) The impact of any and all actions in this case occurred

in Yonkers because that is where Plaintiff worked, and that is where the alleged discriminatory

and retaliatory conduct took place. All claims brought pursuant to the NYCHRL must therefore be

dismissed.

## **CONCLUSION**

Based on the foregoing, Plaintiff's claims are either barred by the prior arbitration award

or must be arbitrated. In either event, the Court must dismiss all causes of action, and should award

Defendants costs and attorneys' fees, and grant such other and further relief as the Court may deem

just and proper.

Dated: New York, New York
     June 18, 2018

                         /s/ Stuart Weinberger_____
                         Stuart Weinberger
                         Goldberg and Weinberger LLP
                         Attorneys for Defendants
                         630 Third Avenue, 18th Floor
                         New York, New York 10017
                         (212) 867-9595 (Ext. 313)
                         SW 1582