UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
ANTHONY LOBBAN,

                          Plaintiff,

          -against-

CROMWELL TOWERS APARTMENTS,
LIMITED PARTNERSHIP; METROPOLITAN
REALTY GROUP, LLC; GPJ CROMWELL
LLC; AND JOHN CARROLLO, *Individually*,

                          Defendants.
-----------------------------------------------------------X

**OPINION & ORDER**

18-CV-247 (CS)

<u>Appearances</u>:
Locksley O. Wade
Law Office of Locksley O. Wade, LLC
New York, New York
*Counsel for Plaintiff*

Stuart A. Weinberger
Goldberg and Weinberger LLP
New York, New York
*Counsel for Defendants*


<u>Seibel, J.</u>

          Before the Court is the motion to dismiss or compel arbitration of Defendants Cromwell

Towers Apartments, Limited Partnership; Metropolitan Realty Group, LLC; GPJ Cromwell

LLC; and John Carrollo.  (Doc. 29.)

**I.     BACKGROUND**

          I accept as true the facts, but not the conclusions, set forth in Plaintiff's Complaint.  (Doc.

1 ("Compl.").)

**A.  Facts**

On July 3, 2009, Defendants Cromwell Towers Apartments, Limited Partnership ("Cromwell"); Metropolitan Realty Group, LLC; and GPJ Cromwell LLC (together, the "Corporate Defendants"), hired Plaintiff to work as a porter at an apartment building they owned in Yonkers, New York.  (*Id.* ¶¶ 13, 25.)  In connection with his employment, Plaintiff joined the Service Employees International Union, Local 32BJ ("SEIU 32BJ" or the "Union").  (*See id.* ¶¶ 32, 37, 46.)

Plaintiff's direct supervisor was Defendant John Carrollo.  (*Id.* ¶ 21.)  Carrollo is white and Plaintiff is black.  (*Id.* ¶¶ 22-23.)  Plaintiff alleges that beginning in or around the spring of 2010, Carrollo "tried to familiarize himself with Plaintiff by using slang words and stereotypical African American vernacular, such as 'hook a brother up' and 'do a brother a favor.'"  (*Id.* ¶ 29.) Carrollo did not speak this way to Plaintiff's white counterparts.  (*Id.* ¶ 30.)

Around December 2011, Plaintiff met with two Union delegates at SEIU 32BJ's New Rochelle office regarding Carrollo's conduct, but Plaintiff did not file a grievance.  (*Id.* ¶ 32.) After that meeting, Carrollo "began harassing and threatening Plaintiff[,] saying [that] Plaintiff 'opened a can of worms' by going to the union," and that "he would retaliate against Plaintiff by writing him up because 'we settle issues in house.'"  (*Id.* ¶ 33.)  Carrollo also began "using the word 'nigger' almost every time he saw Plaintiff."  (*Id.* ¶ 34.)[1]

In the winter or spring of 2012, Plaintiff contacted his new Union delegate and complained about Carrollo's constant use of the word "nigger," but the delegate told Plaintiff that nothing could be done unless Plaintiff had an audio recording of Carrollo saying the word.

---

[1] Plaintiff also alleges that Carrollo began sexually harassing women in the office around this time, but Plaintiff does not bring any claims stemming from that alleged misconduct.  (*See* Compl. ¶¶ 35-36.)

(*Id.* ¶¶ 37-38.)  Throughout 2013 and 2014, Carrollo continued to regularly use the words "nigger" and "nigga."  (*Id.* ¶ 39.)

The abuse worsened beginning in late 2015, with Carrollo's "usage of 'nigger' toward Plaintiff bec[oming] combative."  (*Id.* ¶ 47.)  On December 21, 2015, Carrollo told Plaintiff, "[D]on't be a nigger, don't stay in the trash room for 20 years, go find another job."  (*Id.*)  In the spring of 2016, Carrollo allegedly showed Plaintiff an app on his phone that simulated the noise of a person being whipped and said, "I thought of you[] when I got this."  (*Id.* ¶ 51.)  When Plaintiff asked Carrollo to stop, Carrollo played the whipping noise two more times and, from then on, used it regularly when assigning Plaintiff work.  (*Id.* ¶ 53.)  On June 2, 2016, Carrollo called Plaintiff "Kunta," referencing Kunta Kinte, the character from the novel *Roots* who is an enslaved African and is beaten into submission.  (*Id.* ¶ 54 & n.2.)  On July 5, 2016, while Plaintiff was eating, Carrollo allegedly told him, "[D]amn a nigger eating good."  (*Id.* ¶ 56.)  Whenever Plaintiff objected to Carrollo's use of derogatory and discriminatory language, Carrollo "curs[ed] Plaintiff out."  (*Id.* ¶ 40.)

Plaintiff also alleges that Carrollo "short chang[ed] Plaintiff as to his pay under his contract" and deducted Plaintiff's pay "for uniform maintenance."  (*Id.* ¶¶ 41, 46.)  Plaintiff emailed Scott Jaffee, "Defendants' [o]wner," about discrepancies in his pay and spoke with the payroll department numerous times about issues with his missing wages.  (*Id.* ¶¶ 42, 45, 46.)  On many occasions, the issues with Plaintiff's pay were corrected by either Jaffee or the payroll department.  (*Id.* ¶¶ 45-46).  Plaintiff also alleges he was not properly paid for two vacation days, (*id.* ¶ 49), and was not properly paid for his overtime and other side jobs done for Defendants, (*Id.* ¶ 50).  On or around July 12, 2016, Plaintiff was suspended for three days after "protesting

working overtime, when he was not being paid for it," and complaining about being verbally

discriminated against by Carrollo.  (*Id.* ¶ 57; *se id.* ¶ 58)

On August 17, 2016, Plaintiff filed a charge of race discrimination and retaliation with

the Equal Employment Opportunity Commission ("EEOC").  (*Id.* ¶ 59.)  On September 13,

2016, the EEOC mailed Defendant a "Notice of the Charge of Discrimination," along with

Plaintiff's charge particulars.  (*Id.* ¶ 60.)  On September 19, Carrollo showed Plaintiff a copy of

the charge and "scolded Plaintiff" for filing an EEOC complaint.  (*See id.* ¶ 61.)

On September 27, 2016, Plaintiff was terminated "under the guise of his failure to

properly perform his duties."  (*Id.* ¶ 64.)  On November 3, 2016, Plaintiff filed another EEOC

charge, this time for retaliation.  (*Id.* ¶ 65.)  The EEOC issued Notices of Right to Sue on

November 3, 2017.  (*Id.* ¶ 7; *see id.* at 17-20)

## B.    The Collective Bargaining Agreement

Pursuant to Plaintiff's membership in SEIU 32BJ, his employment was subject to a

Collective Bargaining Agreement ("CBA") between the Union and Cromwell.  (Doc. 31

("Weinberger Decl.") Ex. C ("CBA").)  Under the CBA, the Union is the "sole and exclusive

bargaining representative for the purpose of bargaining in respect to rates of pay, wages, hours of

employment, and all other terms and conditions pertaining to employment."  (*Id.* at 4.)

Article Six of the CBA includes a "no-discrimination" clause that prohibits

discrimination

> against any present or future employee by reason of race, creed, color, age,
> disability, national origin, sex, sexual orientation, union membership, or any
> characteristic protected by law, including but not limited to, claims made pursuant
> to Title VII of the Civil Rights Act, . . . 42 U.S.C. Section 1981, . . . the New York
> State Human Rights Law, . . . or any other similar laws, rules and regulations.

(*Id.* at 9.)  The CBA mandates that "[a]ll such claims shall be subject to the grievance and

arbitration procedure as the sole and e[x]clusive remedy for violations."  (*Id.*)

The CBA also adopts a "[p]rotoc[o]l in the collective bargaining agreement between the Realty Advisory Board on Labor Relations ('RAB') and the Union," (*id.*; *see also* Weinberger Decl. Ex. D at 107-10), which authorizes employees to arbitrate their own claims in "those circumstances in which the Union has declined to take an individual employee's employment discrimination claim under the no discrimination clause of the CBA (including statutory claims) to arbitration and the employee is desirous of litigating the claim," (Weinberger Decl. Ex. D at 113). Even though this protocol allows employees to arbitrate their claims when the Union does not bring them on the employee's behalf, the Union and the RAB disagree as to whether the employee *must* arbitrate. "The Union contends that the CBAs do not make provision for arbitration of any claims that the Union does not choose to take to arbitration, including statutory discrimination claims, and therefore, individual employees are not barred from pursuing their discrimination claims in court where the Union has declined to pursue them in arbitration." (*Id.* at 108.) "The RAB contends that the CBAs provide for arbitration of all individual claims, even where the Union has declined to bring such claims to arbitration." (*Id.* at 108-09.)

### C.    Arbitration Award

Following Plaintiff's termination, the Union brought a grievance to arbitration on his behalf, alleging that Cromwell did not have just cause to discharge Plaintiff. (*See* Weinberger Decl. Ex. B. ("Arb. Award") at 1-2.) The Union argued that "the only explanation for the Employer's decision to discharge him . . . is retaliation against Mr. Lobban for filing his [EEOC] charge." (*Id.* at 10.)

On January 3, 2018, the arbitrator issued an arbitral award after receiving evidence and hearing from multiple witnesses. The arbitrator found that "[t]he Employer had just cause for the September 27, 2016 termination of Anthony Lobban," (*id.* at 16), and that his claim that he was terminated in retaliation for his EEOC charge was unsupported, (*id.* at 14-15). The arbitrator

noted that Plaintiff made "unsupported accusations . . . of racial discrimination by the Employer that he did not support in his own testimony at the hearing." (*Id*. at 15.)  The arbitrator, however, did not make any findings as to whether Plaintiff was subject to discrimination while employed and noted that Carrollo "denied recalling any of the racial comments Mr. Lobban described and testified that anything he may have ever said to Mr. Carollo [*sic*] was in social jest." (*Id*. at 9.)

## II.   PROCEDURAL HISTORY

On January 11, 2018, Plaintiff commenced this suit by filing a complaint alleging the following claims:  (1) racial discrimination under 42 U.S.C. § 1981 against all Defendants; (2) racial discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), against the Corporate Defendants; (3) retaliation under Title VII against the Corporate Defendants; (4) racial discrimination under the New York State Executive Law § 296 against all Defendants; (5) retaliation under the New York State Executive Law § 296 against all Defendants; (6) racial discrimination under the New York City Administrative Code § 8-107(1)(a) against all Defendants; (7) retaliation under the New York City Administrative Code § 8-107(7) against all Defendants; (8) aiding and abetting racial discrimination and retaliation under the New York City Administrative Code § 8-107(6) against Carrollo; (9) retaliation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 215, against all Defendants; and (10) retaliation under New York Labor Law ("NYLL"), § 215, against all Defendants.  (Compl. at 10-14.)

On April 2 and 23, 2018, respectively, the Corporate Defendants and Carrollo submitted pre-motion letters stating their intent to move to dismiss.  (Docs. 12, 19.)  Plaintiff responded on May 2, 2018, (Doc. 22 at 1-2), and on May 10, 2018, the Court held a pre-motion conference during which Plaintiff voluntarily dismissed the New York City claims against Carrollo and declined the opportunity to amend his complaint.  (Minute Entry dated May 10, 2018.)

On July 17, 2018, Defendants moved to dismiss or compel arbitration, (Doc. 29), and filed a memorandum in support of their motion, (Doc. 30 ("Mem.")).  Plaintiff filed his opposition on July 18, 2018, (Doc. 32 ("Opp.")), and Defendants replied on August 2, 2018, (Doc. 35 ("Reply")).

## III.    LEGAL STANDARDS

Defendants move to dismiss on two grounds:  they argue that the claims are precluded by the doctrines of *res judicata* or collateral estoppel, and must in any event be arbitrated under the applicable collective bargaining agreement.  In the alternative they move to compel arbitration of any claims that are not dismissed.  (Doc. 29; *see* Mem. at 21.)

### A.    Motions to Dismiss on Grounds of Preclusion

A motion to dismiss on grounds of preclusion is treated as a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), not as a motion to dismiss for lack of jurisdiction under Rule 12(b)(1).  *See Thompson v. County of Franklin*, 15 F.3d 245, 253 (2d Cir. 1994) ("[T]he doctrine of *res judicata* or issue preclusion in no way implicates jurisdiction.  *Res judicata* challenges may properly be raised via a motion to dismiss for failure to state a claim under Rule 12(b)(6).").  In connection with such a motion, a court may consider CBAs and arbitration awards without converting the motion to a motion for summary judgment. *Cox v. Perfect Bldg. Maint. Corp.*, No. 16-CV-7474, 2017 WL 3049547, at *3 (S.D.N.Y. July 18, 2017).

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks omitted).

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id*. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).[2]

### B.     Motions to Dismiss on Grounds of Mandatory Arbitration Clauses

"[D]istrict courts in this Circuit have treated motions to dismiss based on mandatory arbitration clauses as motions to compel arbitration," *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016), and "[i]n [such] motions . . . courts apply a standard similar to that applicable for a motion for summary judgment," *id*. at 229 (internal quotation marks omitted).  A motion to dismiss based on a mandatory arbitration clause need not be treated as a motion to compel, at least where the moving party does not implicitly or explicitly ask the court to compel arbitration, *see id*. at 230, and in that event the court cannot rely on extrinsic materials without converting the motion to dismiss to a motion for summary judgment, *id*. at 230.  But I find it appropriate to

---

[2] Plaintiff cites to the outdated no-set-of-facts pleading standard.  (Opp. at 4-5.)  That standard was retired by the Supreme Court in 2007 in *Twombly*.  *See* 550 U.S. at 562-63.  No lawyer should be citing it in 2018.

treat the instant motion as a motion to compel, given that Defendants seek arbitration in the alternative. Because the standard is akin to that on summary judgment, materials outside the pleadings may be considered. *Meridian Imaging Sols., Inc. v. OMNI Bus. Sols. LLC*, 250 F. Supp. 3d 13, 21 (E.D. Va. 2017).

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact," and, if satisfied, the burden then shifts to the non-movant to present "evidence sufficient to satisfy every element of the claim." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

"Where the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, [the court] may rule on the basis of that legal issue and avoid the need for further court proceedings." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (alteration and internal quotation marks omitted).

**C.  Conversion of Motion to Dismiss to Motion for Summary Judgment**

Even if materials outside the pleadings were not properly considered on a motion to dismiss on grounds of preclusion, I would convert the motion to dismiss to a motion for summary judgment.  And even if it were not proper to treat as a motion to compel Defendants' motion to dismiss on grounds that the claims must be arbitrated, and thus I could not consider materials outside the Complaint, I would likewise convert that motion to dismiss to a motion for summary judgment.  When a motion is made under Rule 12(b)(6) and matters outside the pleadings are presented to the Court, as is the case here, the motion to dismiss may be converted to a summary judgment motion under Rule 56.  *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991).  A court may exercise its discretion to convert "provided that the court gives 'sufficient notice to an opposing party and an opportunity for that party to respond.'" *Mathie v. Dennison*, 381 F. App'x 26, 26 (2d Cir. 2010) (summary order) (quoting *Groden v. Random House, Inc.*, 61 F. 3d 1045, 1052 (2d Cir. 1995)).  But a court may, under certain circumstances, "convert a motion without giving explicit notice."  *Metrokane, Inc. v. Wine Enthusiast*, 185 F. Supp. 2d 321, 325 (S.D.N.Y. 2002).  "The essential inquiry is whether the [opposing party] should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of reasonable opportunity to meet facts outside the pleadings."  *Gurary v. Winehouse*, 190 F.3d 37, 43 (2d Cir. 1999) (internal quotation marks omitted); *see Metrokane, Inc*, 185 F. Supp. 2d at 325.

"Where both parties submit extrinsic evidence in support of their positions," neither can be considered to have been taken by surprised nor deprived of a reasonable opportunity to meet facts outside the pleadings.  *Garcha v. City of Beacon*, 351 F. Supp. 2d 213, 216 (S.D.N.Y. 2005).  Plaintiff was on notice of Defendants' intent to rely on extrinsic evidence (*i.e.*, the CBA) no later than April 2, 2018, when the Corporate Defendants filed their pre-motion letter.  (*See*

Doc. 12 at 2.)  Instead of objecting to the use of the CBA, Plaintiff also relied on its provisions in his opposition letter.  (Doc. 22 at 1-2.)  At the May 10, 2018 pre-motion conference held before this Court, the Plaintiff did not raise any objection to Defendants' intent to rely on outside evidence.  Defendants and Plaintiff also both attached extrinsic evidence to their motion papers and relied on that evidence to argue their positions.

Therefore, because both parties had notice of the use of extrinsic evidence and intended to benefit from its consideration, the Court in its discretion would, if necessary, convert the motion into one for summary judgment and consider evidence outside the pleadings.

## IV.  DISCUSSION

### A.  Abandonment

Plaintiff does not refute or even discuss Defendants' arguments that the ninth and tenth claims, alleging retaliation under the FLSA and NYLL for complaints about improper wage statements, must be dismissed as precluded or for failure to state a claim.  A federal court may deem a claim abandoned when a party moves to dismiss it and the opposing party fails to address the argument in any way.  *Div. 1181 Amalgamated Transit Union v. R&C Transit, Inc.*, No. 16-CV-2481, 2018 WL 794572, at *4 (E.D.N.Y. Feb. 7, 2018) (collecting cases); *Romeo & Juliette Laser Hair Removal, Inc. v. Assara LLC*, No. 08-CV-442, 2014 WL 4723299, at *7 (S.D.N.Y. Sept. 23, 2014).  Because Plaintiff did not address Defendants' arguments for dismissal of the ninth and tenth causes of action, I "properly infer that plaintiff[], represented by counsel, ha[s] abandoned them," *Louis v. N.Y.C. Hous. Auth.*, 152 F. Supp. 3d 143, 156 (S.D.N.Y. 2016), and they are dismissed.

### B.  *Res Judicata* and Collateral Estoppel

Defendants argue that Plaintiff's claims are barred by *res judicata* and collateral estoppel, also known as claim preclusion and issue preclusion, respectively.

*Res judicata*, or claim preclusion, means that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). To prove the affirmative defense of *res judicata*, a party must show that "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000).

"Collateral estoppel, or issue preclusion, prevents parties or their privies from relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 288 (2d Cir. 2002). Collateral estoppel applies when: "(1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *Evans v. Ottimo*, 469 F.3d 278, 281 (2d Cir. 2006).

"*Res judicata* and collateral estoppel apply to issues resolved by arbitration . . . ." *Daugherty v. Jefferson County*, No. 13-CV-491, 2015 WL 4662474, at *3 (N.D.N.Y. Aug. 6, 2015).

## C.    Claims Barred by *Res Judicata*

To determine if claims or issues in the lawsuit are precluded, the Court must first determine what claims and issues Plaintiff raises here, and then compare them to the issues that were raised, and the claims that were or could have been raised, in the arbitration proceeding.

Plaintiff here raises claims of discrimination on the basis of race, retaliation on the basis of complaints of race discrimination, and retaliation on the basis of complaints of wage-and-hour violations. Discerning what facts Plaintiff believes supports what claims is difficult, because he

asserts his claims in conclusory fashion without tying them to the facts he has recited. (*See* Compl. at 10-14.) Although he does not use the term, he seems to allege that he endured a discriminatory hostile work environment. It is not clear if he claims that his termination was discriminatory or only retaliatory. His retaliation claims seem to allege adverse actions in addition to his termination following his EEOC complaint – specifically, he claims that: (1) after his January 2011 complaint to the Union, Carrollo began using the n-word, (*id.* at ¶¶ 32-34); and (2) after his July 2016 complaints about overtime and discrimination, he was suspended for three days, (*id.* at ¶¶ 57-58). At the arbitration, the arbitrator decided that just cause existed for Plaintiff's termination, and that retaliation for his EEOC complaint was not the reason. (Arb. Award at 15-16.)

Plaintiff's claims are barred by *res judicata* to the extent the retaliatory action alleged is Plaintiff's termination.[3]

First, Plaintiff does not dispute that the arbitrator adjudicated on the merits the Union's complaint on Plaintiff's behalf. Indeed, the arbitrator made findings after hearing witnesses and receiving evidence. He found that "the Union's and Mr. Lobban's assertion that the Employer terminated him in retaliation for his filing an EEOC charge in August is unsupported," and that "the Employer's just cause for terminating Mr. Lobban makes clear that such was the basis for

---

[3] Defendants imprecisely refer to and conflate theories of claim preclusion (*res judicata*) and issue preclusion (collateral estoppel) in their memorandum in support of their motion. For instance, one of their headings states, "Plaintiff's Title VII, NYSHRL, and NYCHRL Retaliation *Claims* Must Be Dismissed Because They Were Already Litigated and Decided by the Arbitrator" and the section concludes that Plaintiff's "*claims* were already litigated and already decided" and therefore Plaintiff is "barred from re-litigating the same *claims*." (Mem. at 13-14 emphasis added)). Both the headings and arguments implicate claim preclusion, but Defendants' argument in that section recites the elements of collateral estoppel and explains why issue preclusion bars Plaintiff's claims. (*See id.*) In any event, the Court has discretion to *sua sponte* raise the issue of *res judicata*. *Gonzalez v. Greyhound Lines, Inc.*, No. 17-CV-5633, 2017 WL 6628587, at *2 (S.D.N.Y. Nov. 1, 2017).

13

his termination, and that retaliation for filing the EEOC charge should not be found to be the basis." (Arb. Award at 14-15.) Because "final judgments in arbitration . . . are entitled to *res judicata*," *Weinraub v. Glen Rauch Sec., Inc.*, 399 F. Supp. 2d 454, 459 (S.D.N.Y. 2005), Defendants satisfy the first element of claim preclusion – *i.e.*, an adjudication on the merits.

Second, "literal privity is not a requirement for *res judicata* to apply. Instead a party will be bound by the previous judgment if his interests were adequately represented by another vested with the authority of representation." *Monahan*, 214 F.3d at 285 (citation and internal quotation marks omitted). "In the context of labor unions and grievances filed on behalf of union members pursuant to collective bargaining agreements, the union is in privity with the member provided that the member 'belonged to the [union] at all relevant times,' and the union was 'the sole and exclusive collective bargaining representative [for its members].'" *Cox*, 2017 WL 3049547, at *4 (alterations in original) (quoting *Monahan*, 214 F.3d at 285). Here, there is no dispute that Plaintiff was at all relevant times a member of the Union and that the Union was responsible for bringing claims on behalf of its members pursuant to the CBA's grievance and arbitration provisions. (Doc. 31 Ex. C at 9). The requisite privity therefore exists between Plaintiff and the Union.

Third, the Union raised a claim at arbitration on Plaintiff's behalf that is identical to the termination aspect of Plaintiff's third, fifth, and seventh claims here. The Union's position at arbitration was that Plaintiff was not terminated for just cause, and "the only explanation for the Employee's decision to discharge [Plaintiff] . . . is retaliation . . . for filing his [EEOC] charge." (Arb. Award at 10.) While the Union did not explicitly tie the claim to the statutes under which Plaintiff seeks redress here, the claim was based on a "substantially identical" factual predicate, and thus, "the claims are deemed to be duplicative for purposes of *res judicata*." *KIPP Acad.*

*Charter Sch. v. United Fed'n of Teachers*, 723 F. App'x 26, 30 (2d Cir. 2018) (summary order) (internal quotation marks omitted)).

Accordingly, the Defendants have carried their burden to establish the elements of *res judicata* as applied to Plaintiff's third, fifth, and seventh causes of action to the extent they are based on Plaintiff's termination. Therefore, this Court grants summary judgment to Defendants on Plaintiff's third, fifth, and seventh causes of action to the extent they are based on Plaintiff's termination.[4]

### D. Claims Not Barred by *Res Judicata* or Collateral Estoppel

Defendants further argue that Plaintiff's claims alleging race discrimination (the first, second, fourth, and sixth causes of action) are barred by *res judicata* and collateral estoppel

---

[4] Further, even if Plaintiff's claims that Defendants fired him in retaliation for complaints regarding his wage statements in violation of the FLSA and NYLL (ninth and tenth causes of action, respectively) had not been abandoned, they "arise from the same nucleus of operative fact" as Plaintiff's other retaliation claims, and therefore satisfy the third element of *res judicata* because they could have been brought in the arbitration. *See Cox*, 2017 WL 3049547, at *5 (internal quotation marks omitted) (dismissing claims that "ar[o]se from the same set of underlying facts adjudicated during the arbitration"). Plaintiff does not argue otherwise. To determine whether the claims asserted in the subsequent action could have been raised in the prior action, the Court must "make a common-sense determination of whether the two actions are so related that they should have been litigated together." *Mahmood v. Research in Motion Ltd.*, 905 F. Supp. 2d 498, 504 (S.D.N.Y. 2012). In doing so, courts "look to whether the underlying facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 90 (2d Cir. 1997) (internal quotation marks omitted). Here, the Union alleged that Plaintiff was fired without just cause and in retaliation for complaining about discrimination. Because determination of those questions requires inquiry into the employer's motivation for the termination, whether retaliation for wage complaints also played a part is related in time, space, and origin; is conveniently considered at the same time; and would be expected to be raised concurrently. *See Risley v. Fordham Univ.*, No. 99-CV-9304, 2001 WL 118566, at *4 (S.D.N.Y. Feb. 13. 2001) (claims precluded as arising from common nucleus of operative facts where plaintiff complained of the same retaliatory acts in prior proceeding). The FLSA and NYLL retaliation claims would thus be precluded even if not abandoned. Likewise, if Plaintiff is attempting to claim here that his termination was an act of racial discrimination rather than discrimination, the same logic would apply and the claim would be barred.

because they arise out of the "same operative facts" as those claims that were already arbitrated. (Mem. at 19-20).

Applying the standard described in note 4 above, I disagree. The claims of workplace discrimination do not strike the Court as part of the same nucleus of operative facts as the termination claim. They relate to conditions Plaintiff allegedly endured for years before his termination, greatly expand the facts that would have to be considered, and would not so obviously have to be litigated simultaneously that one would expect both sets of claims would necessarily be brought together. The discrimination and retaliation claims "arise from the same nucleus of operative facts . . . only to the extent that they stem from plaintiff's employment . . . .; they are separate . . . incidents that . . . are factually distinct." *Dotson v. City of Syracuse*, No. 11-CV-620, 2013 WL 1293775, at *7 (N.D.N.Y. Mar. 27, 2013) (internal quotation marks omitted). Thus, to the extent the discrimination claims (the first, second, fourth and sixth causes of action) are based on acts other than Plaintiff's termination, they are not precluded under *res judicata* as claims that could have been brought.

Likewise, to the extent that Plaintiff alleges retaliation for complaints of discrimination based on retaliatory acts other than his termination, they would not be precluded. Carrollo's usage of the n-word to retaliate for Plaintiff's January 2011 complaint to his Union, and Plaintiff's suspension following his complaints of discrimination in July 2016, involve actions predating his termination, expand the facts to be considered, and would not be expected to necessarily be litigated along with a termination claim. Thus, to the extent the retaliation claims

(the third, fifth and seventh causes of action) are based on acts of retaliation other than Plaintiff's termination, they are also not precluded under *res judicata*.[5]

Defendants' arguments regarding collateral estoppel must also be rejected. While collateral estoppel may be applied to an issue resolved in arbitration, application "may be problematic because arbitrators are not required to provide an explanation for their decision." *Postlewaite v. McGraw-Hill, Inc.*, 333 F.3d 42, 48 (2d Cir. 2003). Thus,

> [t]he party asserting preclusion bears the burden of showing with clarity and certainty what was determined by the prior judgment, and issue preclusion will apply only if it is quite clear that this requirement has been met. In order to obtain summary judgment on collateral estoppel grounds based on an arbitration award, the defendants must make a showing so strong that no fair-minded jury could fail to find that the arbitrator necessarily denied the claim for the reason they assert. This is a heavy burden that cannot be met with evidence that is equivocal.

*Id.* at 49 (alterations, emphases, citations, and internal quotation marks omitted).

The arbitrator's ruling that Plaintiff was terminated for just cause, and not on the basis of filing an EEOC charge regarding discrimination, may be conclusive as to his termination, but it cannot be considered to be dispositive of the issue as to whether Plaintiff suffered any workplace discrimination at all. Indeed, the Union did not bring discrimination claims on Plaintiff's behalf, and the arbitrator did not make any ruling on whether Plaintiff suffered discrimination. The arbitrator ruled only that Plaintiff was not retaliated against for alleging discrimination to the EEOC and was fired for just cause. And while the arbitrator made some references to Plaintiff's allegations of discrimination, he did so only in the context of assessing Plaintiff's credibility, (Arb. Award at 14-15), noted that Carrollo denied the accusations, (*id.* at 9), and did not resolve the dispute.

---

[5] Defendants also assert that Plaintiff's discrimination claims are barred by *res judicata* "[e]ven if the Union did not want to pursue a claim of discrimination on his behalf," because they could have been brought in a new, different arbitration that Plaintiff had the right to bring. (Mem. at 19-20.) But *res judicata* cannot be premised on an action that was never initiated.

It is thus far from "quite clear" that the arbitrator's denial of Plaintiff's retaliation claims amounts to a finding that Plaintiff was not discriminated against at all. Likewise, while the arbitrator found that Plaintiff's termination was not retaliatory, he made no findings as to whether Carrollo's use of the n-word or Plaintiff's suspension were retaliatory. Accordingly, collateral estoppel does not bar Plaintiff's discrimination claims (the first, second, fourth, and sixth causes of action), nor does it bar the retaliation claims (the third, fifth, and seventh causes of action), to the extent they are based on acts other than termination.

### E.  Arbitration of Plaintiff's Remaining Claims

Defendants move to compel arbitration of any of Plaintiff's remaining claims. For the reasons discussed below, Defendants' motion is granted.

Claims like Plaintiff's may be made subject to arbitration through collective bargaining agreements. *See Lawrence v. Sol G. Atlas Realty Co.*, 841 F.3d 81, 83 (2d Cir. 2016) ("Claims under Section 1981, Title VII, the NYSHRL, the FLSA, and NYLL may be made subject to arbitration."). For Plaintiff to be required to arbitrate his claims, the CBA must contain "a 'clear and unmistakable' waiver of Plaintiff's right to pursue his statutory claims in federal court." *Id.* (quoting *Wright v. Universal Maritime Serv. Corp.*, 525 U.S. 70, 80 (1998)). A CBA "clearly and unmistakably waive[s] the employee's federal forum rights" where it "explicitly compel[s] arbitration of statutory (as opposed to contractual) causes of action" and "incorporate[s] specific antidiscrimination statutes." *Id.* at 84.

The CBA here states, in relevant part:

> There shall be no discrimination against any present or future employee by reason of race, creed, color, age, disability, national origin, sex, sexual orientation, union membership, or any characteristic protected by law, including but not limited to, claims made pursuant to Title VII of the Civil Rights Act, . . . 42 U.S.C. Section

1981, . . . the New York State Human Rights Law, . . . or any other similar laws, rules and regulations.

(CBA at 9.). The CBA also provides that "[a]ll such claims shall be subject to the grievance and arbitration procedure as the sole and e[x]clusive remedy for violations. (*Id.*)

The provision constitutes a clear and unmistakable waiver because it compels statutory claims to be arbitrated and incorporates specific antidiscrimination statutes – neither of which Plaintiff disputes. Plaintiff instead argues that the protocol in the collective bargaining agreement between the RAB and Union (which was incorporated into the CBA) contains a carve-out provision that grants employees a choice of forum if the Union does not arbitrate their claims. (Opp. at 2-3.) Specifically, Plaintiff relies on the portion of the protocol that states:

> The Union contends that the CBAs do not make provision for arbitration of any claims that the Union does not choose to take to arbitration, including statutory discrimination claims, and therefore, individual employees are not barred from pursuing their discrimination claims in court where the Union has declined to pursue them in arbitration. The RAB contends that the CBAs provide for arbitration of all individual claims, even where the Union has declined to bring such claims to arbitration. . . .
>
> Notwithstanding the above disagreement, in 2010, the parties initiated the . . . "No-Discrimination Protocol"[] as an alternative to arbitrating their disagreement. . . . The Union and the RAB agree that the provisions of this Protocol do not resolve the reserved question [and it should not] be understood to advance either party's contention as to the meaning of the CBAs with regard to the reserved question.

(Weinberger Decl. at 108-10).

Plaintiff's argument is unavailing. The provision above states only the Union's *contention* regarding whether individual employees are permitted to pursue certain claims in court, and makes clear that the issue is an open one as between the parties. (*Id.* at 110.) The parties do agree, however, that the protocol grants the employee the power to pursue his claim in arbitration if the Union chooses not to bring it on his behalf: "The undertakings described here with respect to arbitration apply to those circumstances in which the Union has declined to take

19

an individual employee's employment discrimination claim under the no discrimination clause of the CBA (including statutory claims) to arbitration and the employee is desirous of litigating the claim." (*Id.* at 113.) And that procedure applies "[w]henever it is claimed that an employer has violated the no discrimination clause." (*Id.* at 110; *see* CBA at 9 ("All [discrimination] claims shall be subject to the grievance and arbitration procedure as the sole and e[x]clusive remedy for violations."))  Because of "'a strong federal policy favoring arbitration as an alternative means of dispute resolution,'" courts have interpreted these exact provisions to bind an employee to arbitrate a discrimination claim even if the Union declines to pursue the claim. *Restea v. Brown Harris Stevens LLC*, No. 17-CV-4801, 2018 WL 1449183, at *4 (S.D.N.Y. Mar. 23, 2018) (quoting *Ross v. Am. Express Co.*, 547 F.3d 137, 142 (2d Cir. 2008), *report and recommendation adopted as modified on other grounds*, 2018 WL 3435060 (S.D.N.Y. July 16, 2018); *see Germosen v. ABM Indus. Corp.*, No. 13-CV-1978, 2014 WL 4211347, at *7 (S.D.N.Y. Aug. 26, 2014) "("Plaintiff's claims are subject to mandatory arbitration pursuant to the [Union and RAB protocol]."); *Bouras v. Hood Hope Mgmt. Corp.*, No. 11-CV-8708, 2012 WL 3055864, at *4 (S.D.N.Y. July 24, 2012) (Union and RAB protocol requires plaintiff to arbitrate claims even if Union declined to do so); *Pointer v. U.H.O. Mgmt. Corp.*, No. 10-CV-8828, 2011 WL 1346801, at *3 (S.D.N.Y. Apr. 1, 2011) (protocol "clearly and unmistakably" requires arbitration of employee's claims); *Duraku v. Tishman Speyer Props., Inc.*, 714 F. Supp. 2d 470, 474 (S.D.N.Y. 2010) ("arbitration is mandated under the protocol"). Plaintiff does not address this authority or otherwise refute that the employee had an obligation (not just an option) to arbitrate.

Accordingly, Plaintiff's remaining claims are subject to arbitration and Defendants' motion to compel arbitration is granted.[6]

### F.    Whether a Stay Is Required

While the Second Circuit has held that "the text, structure, and underlying policy of the [Federal Arbitration Act] mandate a stay of proceedings when all of the claims in an action have been referred to arbitration *and a stay requested*," *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015) (emphasis added), neither party here has requested a stay. Accordingly, a stay is not required and summary judgment may be granted for Defendants. *See Restea*, No. 17-CV-4801, 2018 WL 1449183, at *5; *Valdez-Mendoza v. Jovani Fashion Ltd.*, No. 15-CV-7261, 2017 WL 519230, at *4 (E.D.N.Y. Feb. 8, 2017); *see also Benzemann v. Citibank N.A.*, 622 F. App'x 16, 18 (2d Cir. 2015) (summary order) (absent request, no requirement that district court stay rather than entering judgment against plaintiff after granting motion to compel).

## V.    CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is granted as to Plaintiff's ninth and tenth claims. It is also granted as to Plaintiff's first, second, third, fourth, fifth, sixth, and seventh claims to the extent those claims are based on Plaintiff's termination. It is denied as to those claims to the extent they are based on acts other than Plaintiff's termination, but Defendant's motion to compel arbitration is granted as to these claims. The eighth claim is dismissed as withdrawn. The Clerk of the Court is respectfully directed to terminate the pending motion, (Doc. 29), and close the case.

---

[6] I therefore need not address Defendants' arguments as to whether Plaintiff sufficiently pleaded his remaining claims.

**SO ORDERED.**

Dated: October 29, 2018
      White Plains, New York

                                    _____
                                      CATHY SEIBEL, U.S.D.J.